**STATE of Missouri, Respondent,**

v.

**Jason C. POWELL, Appellant.**

**No. WD 70540.**

Missouri Court of Appeals, Western District.

Aug. 10, 2010.

Kent Denzel, Esq., Columbia, MO, for appellant.

Shaun J. Mackelprang, Esq., and Jamie P. Rasmussen, Esq., Jefferson City, MO, for respondent.

BEFORE DIVISION ONE: LISA WHITE HARDWICK, Chief Judge, Presiding., JAMES M. SMART, JR. and ALOK AHUJA, Judges.

LISA WHITE HARDWICK, Chief Judge.

Jason Powell appeals his conviction on two counts of first-degree child molestation, following a jury trial. Powell contends the circuit court erred in: (1) denying his motion for a mistrial after the prosecutor asked on cross-examination whether he had "ever molested anyone"; and (2) overruling his objections to the minor victims holding teddy bears on the witness stand at trial. For reasons explained herein, we affirm the judgment of conviction.

### FACTUAL AND PROCEDURAL HISTORY

Minors H.S. and M.S. lived in a home with several family members, including their uncle, Jason Powell. Powell often took the many children in the home on trips to the park, to the store, and to go fishing.

On October 11, 2004, Powell took six of his nieces and nephews, including H.S., in his van to go fishing at Cole Camp Creek. Kim McDonald had stopped at the creek and noticed two people in the back of a van who she believed were engaged in sexual activity. When McDonald approached the van, Powell climbed into the front seat and said he was looking for fishing tackle, even though McDonald had not asked him what he was doing. Powell appeared to be holding someone behind him from moving into the front of the van.

McDonald went down to the creek and saw five children playing by the water. Soon thereafter, she saw H.S. walking from the van to the creek while crying. Concerned with what she witnessed, McDonald went to a nearby convenience store and contacted police.

McDonald returned to the creek and saw Powell in the van with H.S. Powell got angry upon seeing McDonald; he called the other children back into the van and drove away. Deputy Sheriff Roy Locke arrived a few minutes later. McDonald gave Locke a description of the van and told him which way Powell had driven.

Locke encountered the van about a mile down the road parked in some brush. There were children playing down by the creek. The side door of the van was open, and H.S. was crying while sitting inside the van. Powell was kneeling in front of her. When Locke asked Powell what was going on, Powell said he was fixing a fishing pole. Locke did not see a fishing pole in the van. When H.S. got out of the van she pulled her pants up higher around her waist and put on her shoes before joining the other children by the creek.

Upon further investigation, H.S. and her older sister M.S. told authorities that Powell had forced them to have sex with him on several occasions. Powell was charged with two counts of first-degree child molestation, a violation of Section 566.067.[1]

At the jury trial, Powell's counsel objected when eleven-year-old H.S. carried two teddy bears as she approached the witness stand to testify. Powell's counsel argued, during a sidebar conference, that there wasn't any reason H.S. needed to hold the teddy bears while on the stand. The trial judge overruled the objection, stating that "there [was] some new section of law in the State of Missouri that the Court shall make accommodations for young witnesses and particularly witnesses in these kinds of cases."[2]

H.S. testified at trial that Powell had sexual intercourse with her on October 11, 2004, the date when McDonald had approached the van at Cole Camp Creek. She said that Powell had forced her to have sexual intercourse with him on many occasions, at his home and when they went on fishing trips, since the time she was seven years old. H.S. also testified that Powell had sexual intercourse with M.S. in the van during fishing trips.

Sixteen-year-old M.S. also carried a teddy bear to the witness stand, and Powell's counsel renewed his objection. During a sidebar conference, the prosecutor stated that the teddy bear had been used to help M.S. feel more comfortable during counseling sessions. The court overruled the objection, stating that the benefit of the teddy bear to M.S. outweighed any alleged prejudicial effect.

M.S. testified that she did not go fishing with Powell on October 11, 2004, but she had gone on a number of other fishing trips with Powell. She said that Powell forced her and H.S. to have sexual intercourse with him in the van during many of these trips. She also testified that Powell had sexual intercourse with her in other locations since she was seven years old. M.S. testified that she kept quiet about the abuse because Powell had said he would kill her and her parents if she told anyone what he had done to her.

Powell testified at trial and denied ever having sexual intercourse with H.S. or M.S. During cross-examination, the prosecutor asked Powell, "Have you ever molested anyone?" Powell responded, "No." Powell's counsel objected and argued there was no factual basis for the question. Outside the hearing of the jury, the court told the prosecutor, "You're asking about anyone and that is a prior bad act. If you've got a conviction you can inquire about that conviction." The prosecutor responded, "I think there's a very good possibility that he's done something similar to this before." The court sustained the objection, explaining that the prosecutor was only entitled to ask Powell about prior convictions.

Powell's counsel moved for a mistrial. The court denied the motion and instructed the jury to disregard the prosecutor's last question. The prosecutor rephrased the question and asked Powell if he had ever been convicted of, pled guilty to, or

---

1. All statutory citations are to the Revised Missouri Statutes 2000, as updated by the Cumulative Supplement 2009.

2. Although it is not clear from the record, the trial judge may have been referring to the Child Witness Protection Act, which did not take effect until August 28, 2009, approximately nine months after Powell's trial. The Act provides that a child, seventeen years of age or younger, may have a "toy, blanket, or similar item in his or her possession while testifying" in certain types of judicial proceedings and under specified conditions. §§ 491.725.2(1), 491.725.3(4)

received treatment for a sex-related crime. Powell responded, "No."

The jury returned a guilty verdict on both counts of first-degree child molestation. The court sentenced Powell to consecutive six-year prison terms. Powell appeals.

## ANALYSIS

### Motion for Mistrial

■ In Point I, Powell contends the circuit court abused its discretion in overruling his motion for a mistrial after the prosecutor asked him whether he had ever molested anyone. We review the denial of a motion for a mistrial for abuse of discretion. *State v. Johnson,* 901 S.W.2d 60, 62 (Mo. banc 1995). An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration. *State v. Moyers,* 266 S.W.3d 272, 278 (Mo.App. 2008).

Powell testified in his own defense that he did not commit the offenses alleged in this case. He did not testify broadly that he never molested anyone. During cross-examination, the prosecutor asked Powell, "Have you ever molested anyone?" Powell's counsel objected to the question, and the court sustained the objection and instructed the jury to disregard the question. The court denied Powell's further request for a mistrial. On appeal, Powell argues the question was a bad faith attempt by the prosecutor to influence the jury with improper evidence of prior misconduct. He asserts the inquiry so prejudiced the jury against him that a mistrial was mandated.

■ Generally, evidence of prior uncharged misconduct is inadmissible for the sole purpose of showing a defendant's propensity to commit criminal acts. *State v. Mayes,* 63 S.W.3d 615, 629 (Mo. banc 2001). This rule exists because "[e]vidence of other crimes, when not properly related to the cause on trial, violates a criminal defendant's right to be tried only for the crime with which he is charged." *State v. White,* 230 S.W.3d 375, 378 (Mo.App.2007).

■ However, "[a] defendant may be cross-examined about his prior convictions for the purpose of impeaching his credibility." *State v. Weber,* 814 S.W.2d 298, 301 (Mo.App.1991); § 491.050. Prior convictions can be proven by record or through cross-examination of the defendant. § 491.050. Cross-examination is limited by a "general requirement of fairness ... and if there is no reasonable basis on which to base such a cross-examination, it should not be made." *State v. Creason,* 847 S.W.2d 482, 486 (Mo.App.1993). Thus, it is improper for a prosecutor to raise an unsupported inference of prior criminal misconduct by the defendant under the guise of impeachment. *State v. Amos,* 490 S.W.2d 328, 330 (Mo.App.1972).

■ "[W]e do not infer bad faith merely from a prosecutor's failure to produce record evidence of a defendant's convictions after his denial of such convictions." *Weber,* 814 S.W.2d at 302. "[A] prosecutor does not have an affirmative duty to lay a documentary foundation prior to questioning a defendant about prior convictions, nor does he have the affirmative duty to establish the bona fides of such questioning after a defendant's denial." *Id.*

In *Amos,* the trial court denied a motion for mistrial after the prosecutor displayed what appeared to be an official FBI "rap sheet," not offered into evidence, before the jury while persisting to question the defendant about a number of felonies after the defendant unequivocally denied having ever been convicted of a felony. 490

S.W.2d at 329–32. On appeal, we reversed and granted a new trial, explaining that "[t]he full course of the impeachment cross-examination created an unmistakable, although legally unsupportable, inference that defendant had been convicted of grand larceny." *Id.* at 331.

In Powell's case, the prosecutor did not persist in a course of questioning that created an unsupportable legal inference; instead, he properly rephrased his question after the circuit court sustained the objection by defense counsel. Once Powell denied having any prior convictions or treatment for a sex-related offense, the prosecutor did not in any manner imply to the jury that he was aware Powell had molested someone in the past. Considering these circumstances, we do not believe the prosecutor's questioning was in bad faith.

■ We also disagree that that the court was required to grant a mistrial. "The declaration of a mistrial is a drastic remedy to be exercised only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed." *Johnson,* 901 S.W.2d at 62.

In considering prejudice to the defendant, our court has held that despite the general rule prohibiting propensity evidence of uncharged crimes, "[v]ague and indefinite references to misconduct do not warrant a mistrial unless the reference is clear evidence of the defendant's involvement in another crime." *State v. Norris,* 237 S.W.3d 640, 644 (Mo.App.2007). We are mindful that the trial court is in the better position to evaluate the prejudicial effect of the incident giving rise to the request for a mistrial and determine whether a curative instruction is adequate to cure any prejudice. *Johnson,* 901 S.W.2d at 62. We must presume the jury followed the trial court's instructions to

disregard improper questions. *Woods v. Friendly Ford, Inc.,* 248 S.W.3d 699, 707 (Mo.App.2008).

Here, the prosecutor asked Powell if he had ever molested anyone, to which Powell responded, "No." While improper, this question was brief, vague, and indefinite, and the circuit court timely instructed the jury to disregard the question. Additionally, the jury was provided Instruction No. 2, patterned on MAI–CR 3d 302.02, which directed that they "must not assume as true any fact solely because it is included in or suggested by a question asked [of] a witness" and "[a] question is not evidence, and may be considered only as it supplies meaning to an answer."

The circuit court had the opportunity to evaluate, first hand, any potential prejudicial effects from the prosecutor's question. The court's explanation to the prosecutor and the curative instructions indicate that it acted carefully to guard against any improper influence on the jury. Accordingly, the court did not abuse its discretion in denying the motion for mistrial. Point I is denied.

## Objections to Teddy Bears

■ In Point II, Powell contends the circuit court abused its discretion in overruling his objection to the child witnesses holding teddy bears during their trial testimony. Powell argues there was no indication that eleven-year-old H.S. or sixteen-year-old M.S. were unable to testify without the comfort items. He also asserts the teddy bears unfairly bolstered the witnesses' testimony and made the jury more sympathetic to their allegations.

■ The trial court has considerable discretion in matters regarding examination of witnesses. *State v. Gollaher,* 905 S.W.2d 542, 546 (Mo.App.1995). "The exercise of that discretion should not be disturbed on appeal unless it has been abused

or substantial harm has been improperly done to the complaining party." *Id.* at 546–47.

 Courts often allow non-standard procedures in cases involving the examination of minors in sexual abuse cases:

> Young children, who are victims of sexual abuse, have great difficulty in recounting to juries the sordid details of their painful experience. Wide latitude should be granted to trial courts so that such victims can recount their experiences without being overwhelmed by crippling emotional strain. Their testimony is often of critical importance since they are often the only occurrence witness.

*State v. Pollard*, 719 S.W.2d 38, 42 (Mo. App.1986). However, behavior or argument designed solely to appeal to the jury's emotional sympathy for a witness is irrelevant and, therefore, improper. *See State v. Knese*, 985 S.W.2d 759, 774 (Mo. banc 1999).

Although not in effect at the time this case was tried, Missouri law currently permits courts to consider whether a child should be allowed to have a toy, blanket or similar item while testifying. § 491.725. This trend follows judicial decisions in other jurisdictions, where courts have found the practice acceptable upon weighing the beneficial effects of the comfort items against any potential prejudice. *See State v. Hakimi*, 124 Wash.App. 15, 98 P.3d 809, 811–12 (2004) (trial court did not abuse its discretion in permitting two nine-year-old sexual assault victims to testify while holding a doll when it determined the security the object provided the witnesses outweighed any potential prejudice); *State v. Marquez*, 124 N.M. 409, 951 P.2d 1070, 1074 (1997) (trial court did not abuse its discretion in permitting twelve-year-old sexual assault victim to testify while holding a teddy bear because "[t]he trial court properly balanced the prejudicial effect of the teddy bear against the necessity of the teddy bear's calming effect"); *State v. Cliff*, 116 Idaho 921, 782 P.2d 44, 46–47 (1989) (trial court properly allowed eight-year-old sexual assault victim to testify while holding a doll when guardian ad litem testified doll had a calming effect on child). *But cf. State v. Palabay*, 9 Haw. App. 414, 844 P.2d 1, 5–7, 10–11 (1992) (error, albeit harmless, for the trial court to permit twelve-year-old sexual assault victim to testify while holding teddy bear over the objections of defense counsel when "there [was] no evidence on the record to indicate the compelling necessity for [the victim] to hold a teddy bear while testifying").

While Missouri courts have not directly addressed this issue, we are guided by analogous decisions involving minor witnesses testifying about traumatic events. In *Pollard*, we found no prejudicial harm to the defendant when the trial court permitted the mother of the six-year-old sexual assault victim to sit near the counsel table while the victim testified. 719 S.W.2d at 42. In *Gollaher*, we declined to find plain error when the trial court permitted the grandfather of an eight-year-old girl, who had witnessed the defendant sodomize her young brother, to stand by the witness box and hold the girl's hand while she testified. 905 S.W.2d at 546.

In this case, the trial court had the opportunity to observe the child witnesses and fully consider the usefulness of the teddy bears against the possibility of any prejudice. The record indicates H.S. and M.S. carried the teddy bears as a source of familiarity and comfort while testifying about very traumatic events in their lives. There is nothing to suggest that the stuffed animals were merely an attempt to cater to the emotional sympathy of the jurors. No reference was made to the

teddy bears by any of the witnesses or counsel in the presence of the jury.

We recognize that the children's ages (eleven and sixteen) may have counseled against the need for such accessories. We also emphasize that trial courts must be cognizant of the possibility that comfort items or other accommodations for minors may unfairly engender sympathy for complaining witnesses. When an objection is raised, courts should require some explanation of the need for such items, particularly when the items will be used during the testimony of teenage children. Nevertheless, in this case, we conclude that the trial court properly weighed the impact of the teddy bears on the witnesses and the jury, and did not abuse its discretion in overruling Powell's objection. Point II is denied.

### CONCLUSION

We affirm the judgment of conviction.

All Concur.