

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

DEMARIO R. BELLO,          )
                                          )
          Appellant,        )
                                          )
vs.                          )        WD77477
                                          )
STATE OF MISSOURI,       )        Opinion filed:  June 30, 2015
                                          )
          Respondent.     )

## APPEAL FROM THE CIRCUIT COURT OF PLATTE COUNTY, MISSOURI
## THE HONORABLE ABE SHAFER, IV, JUDGE

Before DivisionTwo:  Lisa White Hardwick, Presiding Judge,
Victor C. Howard, Judge and Cynthia L. Martin, Judge

Demario Bello appeals the denial of his Rule 24.035 motion for post-conviction relief after an evidentiary hearing.  Bello pleaded guilty to felony charges of second degree assault of a law enforcement officer, resisting a lawful stop, and possession of a controlled substance, and misdemeanor driving while revoked pursuant to a plea agreement with the prosecutor.  The court accepted Bello's guilty pleas and sentenced him within the range of punishment.  Bello sought to vacate his convictions and sentences arguing that plea counsel was ineffective for failing to object to the large number of uniformed police officers present in the courtroom at sentencing or to request that the number of uniformed police officers be limited or that off-duty officers be made to wear street clothes.  Bello also argues that he was abandoned by post-conviction counsel

when claims from his pro se motion were not included in post-conviction counsel's amended motion. Bello's appeal is dismissed in part and the judgment is affirmed.

## Background

On July 31, 2011, Officer Bradley Dingman pulled over Bello, who stated that he did not have his driver's license with him. Captain John Jordan arrived on the scene to assist. It appeared that Bello was going to attempt escape, and Captain Jordan tried to restrain him, but Bello broke free, and after a struggle, managed to get back into his car. Bello then started the car and drove away, dragging Captain Jordan alongside the vehicle, crossing over lanes of traffic where there were other vehicles, and finally crashed into a light pole. Bello then fled on foot but was captured. Cocaine powder was found on Bello's shorts, and officers found a baggy of cocaine in his vehicle.

Captain Jordan suffered extensive and severe injuries from Bello dragging him through traffic, requiring him to be treated in the intensive care unit for two days. Captain Jordan's injuries required him to have multiple surgeries, and at the time of Bello's guilty pleas, he faced the prospect of additional surgeries in the future.

On May 3, 2012, Bello pleaded guilty to felony charges of second degree assault of a law enforcement officer, § 565.082.1(2), RSMo Cum. Supp. 2009, resisting a lawful stop, § 575.150, RSMo Cum. Supp. 2013, and possession of a controlled substance, § 195.202, RSMo Cum. Supp. 2010, and misdemeanor driving while revoked, § 302.321, RSMo Cum. Supp. 2005. At the guilty plea hearing, the court questioned Bello to ensure that his guilty pleas were knowing, intelligent, and voluntary, and to ensure that there was a factual basis for the pleas. Bello testified that he understood the range of punishment, which included up to fifteen years for the assault, four years for resisting arrest, seven years for possession of a controlled substance, and a

year for driving while revoked. He testified that he knew about the State's earlier plea offer of twelve years and that he had rejected it. Bello stated that he knew that sentencing would be up to the court and that the court would not be bound by any recommendation in the sentencing assessment report (SAR). The court accepted Bello's pleas and found him guilty of each offense charged.

A sentencing hearing took place June 21, 2012. The court stated it had reviewed the State's recommendation and attached letters, the letters submitted by the defense, and the SAR.

The State presented testimony from Captain Jordan's physical therapist, Captain Jordan, Captain Jordan's son, and Captain Jordan's wife. The State recommended consecutive sentences of fourteen years for the assault charge and three years for resisting arrest, as well as six years for possession and one year for driving while suspended, to run concurrently with the other sentences.

Counsel for Bello requested "fairness" and asked the court to acknowledge that he had "taken full responsibility for his actions[.]" Counsel said that Bello told him he would not put Captain Jordan and his family through the burden of testifying at trial. Counsel urged the court to consider community structured sentencing such as work release, so that Bello could continue to work at being "a better example" for his three-year-old son. Counsel argued that Bello had panicked and was not maliciously trying to hurt an officer. Counsel said Bello did not take the plea offer of twelve years because he could not put his son through being away from him that long, so he was requesting the court to consider other options but ultimately "laying himself at the mercy of the court."

Testimony from Bello's family and girlfriend was sympathetic to Captain Jordan and his family, expressed Bello's good qualities, and requested leniency and fairness. Bello's girlfriend testified also about Bello's incarceration's effect on her and on their son.

Bello addressed the court, apologizing to Captain Jordan, and explaining that he had acted out of fear and had no intention of hurting anyone. He asked for mercy, apologized to Captain Jordan's son, and reiterated his lack of intention to harm. Bello further stated:

> I see a lot of officers in the room, this is not me. I don't want you guys to be in fear of me upon returning to society. You know, this is not me. I've learned my lesson. It was an accident out of fear. This is not something that I'll continue to do.

After argument by the State and defense counsel, the court noted that Captain Jordan suffered serious physical injury and that Captain Jordan, his family, friends, and community suffered a serious and permanent loss. The court observed that Bello and his family and friends had and would continue to experience a serious loss, but that his crime was violent and involved serious physical injury to Captain Jordan. The court expressed its recognition that there were supporters in attendance at the sentencing for Captain Jordan and the State and supporters for Bello, and encouraged all in attendance to control their emotions and avoid any "unfortunate [] exchanges" following the announcement of Bello's sentence. The court then sentenced Bello to twelve years imprisonment for the assault, three years for resisting a lawful stop, three years for possession of a controlled substance, and ninety days in the county jail for driving while revoked, the two three-year sentences to run concurrent to one another and consecutive to the assault sentence.

Bello filed a pro se Rule 24.035 motion, and counsel filed an amended motion, alleging ineffective assistance of counsel at sentencing for failure to object to the presence of "a large number of uniformed law enforcement officer[s] from multiple jurisdictions sitting together in

4

the courtroom as spectators." Bello alleged that had counsel objected, the court would have "either limited the number of uniformed officers in the courtroom or required the officers to appear in street clothes if they wished to sit as spectators" and there was a reasonable probability that Bello would have received a lesser sentence.

A hearing was held on the motion, at which the court heard testimony from plea counsel, Bello's father and Bello.

Counsel testified that the SAR indicated a mitigated sentence of probation and an aggravated sentence of five years in prison, that 60.6 percent of those convicted of assault of a law enforcement officer were placed on probation, and that 24.2 percent received a prison sentence with an average sentence of six and a half years. Counsel was asked if she believed the judge would have a hard time facing the approximately fifty uniformed officers who were seated on both sides of the gallery and still consider the full range of punishment for Bello. Counsel replied, "Yes and no. I believe that anybody would have a hard time just with the sheer volume that was out there." She testified that she did not object to the number of officers or to their wearing uniforms because she thought it might be frivolous to object to them being there as members of the public at a public trial proceeding, and to ask to have them removed "didn't cross [her] mind[.]"

On cross-examination counsel clarified that the average sentences for the felonies in the SAR were calculated in isolation, not accounting for the commission of multiple felonies at once, whereas the range of punishment the court has the discretion to impose pursuant to statute allows the court to consider multiple felonies, as well as "the defendant, what happened, the circumstances surrounding the event, [and] the injuries." She also testified that she discussed the

5

offer of twelve years from the State with Bello, as well as the possible range of punishment for each of his crimes, and that the court could sentence him anywhere in those ranges.

The motion court denied Bello's motion, finding that the court considered all relevant and appropriate factors in the sentencing proceedings and that it was not influenced in its sentencing by the presence of uniformed officers. The motion court concluded that Bello failed to prove that the court would have limited the number of officers in the room if requested; failed to produce evidence that any individual present at sentencing was disruptive, acted inappropriately, or in any way had inappropriate contact with the court; and failed to prove that the court was improperly influenced by the presence of uniformed officers in the courtroom. The court noted that Bello's evidence of improper influence was that his sentence was more than the average listed in the SAR, but that average did not account for the commission of multiple felonies, and Bello's sentence was within the potential range of punishment.

The court denied Bello's motion and this appeal by Bello followed.

**Standard of Review**

Appellate review of the denial of a Rule 24.035 motion for post-conviction relief is limited to the determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Stanley v. State*, 420 S.W.3d 532, 539 (Mo. banc 2014). "The motion court's findings and conclusions are clearly erroneous only if, after review of the record, the appellate court is left with the definite and firm impression that a mistake has been made." *Stanley*, 420 S.W.3d at 539 (internal quotes and citation omitted). "Movant has the burden to show by a preponderance of the evidence that the motion court clearly erred in its ruling." *Id.* (internal quotes and citation omitted).

**Ineffective Assistance of Counsel**

Bello argues that the motion court clearly erred in denying his claim that plea counsel was ineffective for failing to object to the large number of uniformed police officers present in the courtroom at sentencing or to request that the number of uniformed police officers be limited or that off-duty officers be made to wear street clothing.

To prevail on an ineffective assistance of counsel claim, a movant must satisfy a two-prong test. *Taylor v. State*, 403 S.W.3d 683, 686 (Mo. App. W.D. 2013). He must show that (1) counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances and (2) he was prejudiced thereby. *Id.*; s*ee also Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the movant fails to satisfy either the performance prong or the prejudice prong of the test, the appellate court need not consider the other, and the claim of ineffective assistance of counsel must fail. *Taylor*, 403 S.W.3d at 686 (citing *Strickland*, 466 U.S. at 687).

To establish prejudice, Bello must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Johnson v. State*, 406 S.W.3d 892, 899 (Mo. banc 2013) (internal quotation and citation omitted). When arguing ineffective assistance at sentencing, the required showing is that, but for counsel's purported errors, there is a reasonable probability that the sentence would have been lower. *Cherco v. State*, 309 S.W.3d 819, 827, 829–30 (Mo.App.W.D.2010).

Bello specifically argues that the sentencing court would have been obliged to sustain an objection from counsel to the presence of a large number of uniformed officers in the courtroom during the sentencing hearing. To succeed on an ineffective assistance claim based on counsel's failure to object, Bello must show that "(1) the objection would have been meritorious, and (2)

7

the failure to object resulted in substantial deprivation of his right to a fair trial." *Hays v. State*, 360 S.W.3d 304, 312 (Mo. App. W.D. 2012) (citing *West v. State*, 244 S.W.3d 198, 200 (Mo.App. E.D.2008)).

In support of his argument that the omitted objection would have been meritorious, Bello claims that the presence of a large number of uniformed police officers from multiple jurisdictions at his sentencing "conveyed an implied message to sentence Mr. Bello to a longer term of imprisonment[,]" constituted a "show of force[,]" and, under the rationale of *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986), "presented an unacceptable risk that impermissible factors would come into play and, therefore, was inherently prejudicial."

An inherently prejudicial practice is one which may affect a juror's judgment and feelings about the defendant and/or constitute "an affront to the very dignity and decorum of judicial proceedings[.]" *Holbrook v. Flynn*, 475 U.S. 560, 568 (1986). An inherently prejudicial practice thereby threatens the fairness of the fact finding process in a way that warrants close judicial scrutiny and must therefore be justified by an essential state interest. *Flynn*, 475 U.S. at 568-69. The *Flynn* court held that four uniformed state troopers sitting in the first row of the spectators' section just behind the six defendants for the duration of the trial was not so inherently prejudicial that it denied the defendant a fair trial. *Id.* at 562, 571.

Here, the allegations were that there were at least fifty uniformed officers from multiple jurisdictions in the courtroom for Bello's sentencing and counsel believed the judge would have a hard time considering the full range of punishment facing them, but did not object or request limitations on their numbers or dress. Bello argued that his sentence being higher than the average indicated in the SAR was evidence of improper influence.

Bello's situation presents a "hybrid of the state-sponsored courtroom practice cases and those cases making spectator-conduct claims"[1] because, "[w]hile the State may not have directed the numerous uniformed officers to attend [his] proceedings, as spectators, they nevertheless were wearing their uniforms as law enforcement officers, an unmistakable symbol of state authority." *Johnson v. State*, 406 S.W.3d 892, 912 (Mo. banc 2013) (Breckenridge, J., concurring in part, dissenting in part), *reh'g denied* (Oct. 1, 2013), *cert. denied*, 134 S. Ct. 1495 (2014). The *Johnson* court majority decided that the allegation that "there were a number of uniformed police officers in the hallway and the courtroom" during voir dire and both phases of trial was not sufficient to support the ultimate conclusion that the presence of officers in the courthouse could have influenced the outcome of Johnson's trial. 406 S.W.3d at 903.

Bello's circumstances markedly differ from those in both *Flynn* and *Johnson*: the proceeding was a sentencing hearing after his guilt had been conclusively established by his plea, and the sentencing was heard and decided by the court, not a jury. As such, there was no risk of a guilt determination being based on impermissible factors or of jurors being influenced by impermissible factors. Furthermore, the court is presumed to know and apply the law, *Haddock v. State*, 75 S.W.3d 872, 877 (Mo. App. W.D. 2002), and is presumed not to have been affected in sentencing by arguably prejudicial evidence. *Anderson v. State*, 402 S.W.3d 86, 92 (Mo. banc 2013).

---

[1] The U.S. Supreme Court held in *Estelle v. Williams*, 425 U.S. 501, 505 (1976)) that to force a defendant to stand trial in jail attire presented "an unacceptable risk . . . of impermissible factors coming into play." The *Flynn* court found that there was not an unacceptable risk of impermissible factors coming into play inherent in the presence of four uniformed state troopers on the front row of the spectators' section, behind the defendant, to provide courtroom security for the six defendants on trial while the usual security officers were unavailable, and noted that such arrangement was "unlikely to have been taken as a sign of anything other than a normal official concern for the safety and order of the proceedings." 475 U.S. 570-71.

In a case involving spectator conduct, the Supreme Court did not answer the question of what test applies to such conduct, deciding *Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) based on narrow grounds related to the Anti-terrorism and Effective Death Penalty Act of 1996. While the *Musladin* court distinguished the state-sponsored practices of *Williams* and *Flynn*, it did observe that "that certain courtroom practices are so inherently prejudicial that they deprive the defendant of a fair trial." *Id.* at 72.

Moreover, the public has a qualified First Amendment right to attend a criminal trial, although that right "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller v. Georgia*, 467 U.S. 39, 44-45 (1984). The balance of interests requires special care, however, and the presumption of openness may be overcome only in rare circumstances by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 45. Some benefits of open trial proceedings include "that the public may see [that the accused] is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions[,]" as well as "encourag[ing] witnesses to come forward and discourag[ing] perjury." *Id.* at 46 (internal quotations and citations omitted).

Here, the motion court found that the court room is open to the public and all members of the public are entitled to attend and witness proceedings in criminal cases. The court added that Bello failed to produce any evidence of improper conduct or influence by individuals attending the sentencing, and that the court was not influenced in its sentencing determination by the presence of uniformed officers.

Furthermore, the legislature has prescribed broad ranges of punishment for various criminal offenses and has directed that, within these ranges "the court shall decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant and render judgment accordingly." Section 557.036.1. "This statute imposes an affirmative duty upon a trial judge to undertake a case-by-case, defendant-by-defendant

10

evaluation and to fashion an appropriate disposition. It is the responsibility of the trial judge to impose a punishment which not only fits the crime, but which also fits the criminal." *Thurston v. State*, 791 S.W.2d 893, 897 (Mo. App. E.D. 1990). This responsibility would not be properly fulfilled by automatically sentencing every offender to the average sentence as indicated in the SAR "without any consideration of the varying circumstances of the crimes committed or the background and character of the different defendants." *Id.* at 897-98.

Here, the motion court found that all relevant and appropriate factors were considered by the court in the sentencing proceedings and went on to conclude that Bello did not produce evidence that the court was improperly influenced by the presence of uniformed officers, but rather that he merely asserted that the court was unable to remain impartial with officers present in the courtroom. The court further found that Bello produced average sentences as the only evidence that the court was improperly influenced, although these averages did not account for the commission of multiple felonies. The court also noted that Bello's sentence was within the range of punishment for the crimes to which he pled guilty.

Because (1) at sentencing, Bello's guilt had already been established, (2) the court, rather than a jury, decided Bello's sentence, and (3) trial proceedings are presumptively open; the presence of many uniformed officers at Bello's sentencing was not "inherently prejudicial." Thus any objection to such presence, numbers, and or uniforms would not have been meritorious. "Counsel cannot be deemed ineffective for failing to make a meritless objection." *Hays* at 313 (citing *Tisius v. State*, 183 S.W.3d 207, 217 (Mo. banc 2006)). Point one denied.

11

**Abandonment**

Bello also argues that the motion court plainly erred in failing to sua sponte hold a hearing to determine if post-conviction counsel abandoned Bello by not raising pro se claims from his pro se Rule 24.035 motion.

The Missouri Supreme Court has held that in order to find abandonment, a showing must be made that post-conviction counsel either (1) took no action on behalf of the movant to file an amended motion, resulting in movant not receiving meaningful review of his claims, or (2) failed to file an amended post-conviction relief motion in a timely manner despite being aware of the need to do so. *Taylor v. State*, 254 S.W.3d 856, 858 (Mo. banc 2008). "Where the record reflects that counsel took no action to investigate the postconviction claims as required by… Rule 24.035(e), the motion court must inquire sua sponte into the performances of both movant and counsel." *Pope v. State*, 87 S.W.3d 425, 427-28 (Mo. App. W.D. 2002). Such inquiry is also called for when "abandonment arises from conduct that is tantamount to a total default in carrying out the obligations imposed upon appointed counsel under the rules." *Id.* at 428 (internal quotations omitted).

However, a complaint that post-conviction counsel "abandoned" a potential claim by omitting from the amended motion a claim asserted by movant in his pro se motion, which is Bello's claim here, does not constitute abandonment, "but more accurately a claim that counsel was ineffective." *Volner v. State*, 253 S.W.3d 590, 593 (Mo. App. S.D. 2008) (internal quotation omitted). The scope of abandonment does not encompass perceived ineffectiveness of post-conviction counsel. *Barnett v. State*, 103 S.W.3d 765, 774 (Mo. banc 2003). Because Bello's claim of purported abandonment does not fall within the class of recognized acts that would subject it to an abandonment analysis and because a post-conviction movant has no right to

effective assistance of counsel, Bello's second point is not reviewable or cognizable on appeal.

*Winfield v. State*, 93 S.W.3d 732, 738 (Mo. banc 2002).

Point two is dismissed and the judgment is affirmed.

_____
VICTOR C. HOWARD, JUDGE

All concur.

13