

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110295 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Elizabeth B. Hogan |
| TYRONE VALENTINE, | ) | |
| | ) | |
| Appellant. | ) | Filed: May 2, 2023 |

### Introduction

Tyrone Valentine ("Appellant") appeals the judgment of the St. Louis City Circuit Court convicting him of stealing a motor vehicle. Appellant raises two points on appeal. In Point I, Appellant argues the trial court erred allowing a victim services advocate to sit in the jury box during Victim's testimony because it was inherently prejudicial, depriving him of a fair trial in violation of his constitutional rights. In Point II, Appellant argues the trial court erred allowing the victim services advocate's position in the courtroom because it was actually prejudicial, depriving him of a fair trial in violation of his constitutional rights. Because Appellant fails to demonstrate he was inherently prejudiced by the courtroom arrangement at his trial, we deny Point I. Because Appellant fails to demonstrate he was actually prejudiced by the courtroom arrangement at his trial, we deny Point II. Because Appellant fails to demonstrate inherent prejudice or actual

prejudice, he fails to demonstrate he was deprived of a fair trial in violation of his constitutional rights.

We affirm.

**Factual and Procedural History**

The State alleged on June 27, 2020, in the City of St. Louis, Appellant unlawfully confined Victim with a deadly weapon for the purpose of terrorizing her and took her car without her consent. On October 22, 2020, a grand jury in St. Louis City indicted Appellant on three counts: first-degree felony kidnapping, in violation of section 565.110, RSMo Cum. Supp. 2017; felony armed criminal action, in violation of section 571.015; and felony stealing, in violation of section 570.030, RSMo Cum. Supp. 2017.[1] Appellant pled not guilty.

Appellant was tried by a jury on December 14, 2021, during the COVID-19 pandemic. Before the jury was sworn in, the trial court noted the jury was seated in the gallery, not the jury box, "to respect social distancing and protocols." The trial court noted its new chief communications officer was seated in the jury box to "familiarize himself" with the court. The trial court told the jury that witnesses would testify from a chair in front of the bailiff's desk. Also, there was a "screen" the parties could show the jury evidence on.

The State called Victim as its first witness. Appellant's counsel approached the bench and objected to the presence of a victim services advocate in the jury box. The trial court overruled the objection, stating the victim services advocate was sitting "behind a screen," approximately six feet from Victim, who was "testifying to the right of the bailiff."

Victim testified as follows. She dated Appellant from October or November 2017 through December 2019, when she ended the relationship because Appellant "was really aggressive and

---

[1] All statutory references are to RSMo 2016, unless otherwise indicated.

abusive." On June 27, 2020, Victim visited Appellant at his mother's house in St. Louis City. When Appellant approached her car, Victim unlocked her doors and let him in. Appellant accused Victim of infidelity during their relationship and Victim asked Appellant to get out of her car. Appellant refused. Victim got out of her car, but Appellant caught up with her, "pull[ed] out his gun," put his arm around her, and told her she was "not going to make a scene." Appellant told Victim to get back in the car and give him her phone and keys. Appellant drove her around the city in her car, hit her in the head with his hand and with the barrel of his gun, and repeatedly threatened to kill her. Victim escaped the car and tried to hide while Appellant chased her with her car and screamed at her. She crossed four lanes of traffic and used a gas station's phone to call police. The State showed the jury video surveillance footage of Victim running across the street to the gas station.

Appellant moved for acquittal at the close of the State's evidence and again at the close of all evidence. On the second day of trial, December 15, 2021, the jury returned a verdict finding Appellant guilty of stealing but not guilty of kidnapping and armed criminal action. On January 3, 2022, Appellant filed a motion for acquittal notwithstanding the jury's verdict or, in the alternative, a new trial, arguing he was prejudiced by the victim services advocate's presence in the jury box during Victim's direct examination. Appellant argued under "normal circumstances" the victim services advocate "would be seated out in the gallery and not beyond the bar during trial." Appellant argued this arrangement "elicited sympathy" for Victim and "enflamed the jury." On January 21, 2022, the trial court denied Appellant's motion for new trial and sentenced Appellant to ten years in the Department of Corrections. This appeal follows.

**Standard of Review**

"The trial court has considerable discretion in matters regarding examination of witnesses." *State v. Welch*, 600 S.W.3d 796, 815 (Mo. App. E.D. 2020) (quoting *State v. Dickson*, 337 S.W.3d 733, 743 (Mo. App. S.D. 2011)). "The exercise of that discretion should not be disturbed on appeal unless it has been abused or substantial harm has been improperly done to the complaining party." *Id.* (quoting *Dickson*, 337 S.W.3d at 743). An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances before the court at the time and is so unreasonable and arbitrary that it shocks one's sense of justice and indicates a lack of careful consideration. *Id.* (citing *Gallagher v. DaimlerChrysler Corp.*, 238 S.W.3d 157, 162 (Mo. App. E.D. 2007)). "Whenever a courtroom arrangement is challenged as inherently prejudicial, the court must consider whether the practice presents an unacceptable risk that impermissible factors will come into play which might erode the presumption of innocence." *Id.* (quoting *State v. Gollaher*, 905 S.W.2d 542, 546–47 (Mo. App. E.D. 1995)). If the practice itself is not inherently prejudicial and no actual prejudice is demonstrated, then the trial court did not abuse its discretion. *Id.* (citing *Gollaher*, 905 S.W.2d at 546–47). If the courtroom practice is inherently prejudicial or actual prejudice has occurred, a violation of constitutional rights is an issue reviewed *de novo*. *L.I.B. v. Juv. Officer*, 640 S.W.3d 813, 816 (Mo. App. W.D. 2022) (citing *State v. Justus*, 205 S.W.3d 872, 878 (Mo. banc 2006)).

**Discussion**

*Point I: Inherent Prejudice*

*Argument*

Appellant argues the trial court erred allowing the victim services advocate, an employee of the Office of the Circuit Attorney of the City of St. Louis, to escort Victim to the witness stand

4

and sit in the jury box during Victim's testimony because this was an inherently prejudicial, state-sponsored courtroom practice that violated his constitutional rights to due process and a fair trial. Appellant argues this arrangement posed an unacceptable threat to the fairness of his trial and there was no essential state policy or interest to justify it. Appellant notes a fair trial is a fundamental right and requires a neutral jury and courtroom free from coercion. *State v. Hartman*, 479 S.W.3d 692, 702 (Mo. App. W.D. 2015) (citing *State v. Baumruk*, 85 S.W.3d 644, 650–51 (Mo. banc 2002)). A trial court must be "extremely vigilant and take appropriate steps to minimize the possibility that a defendant will be prejudiced." *Id*. (citing *State v. Peacock*, 725 S.W.2d 87, 90 (Mo. App. S.D. 1987)).

Appellant argues we "must determine whether [this] procedure or arrangement was 'so inherently prejudicial as to pose an unacceptable threat to [his] right to a fair trial.'" *Holbrook v. Flynn*, 475 U.S. 560, 572 (1986). The question is not "whether jurors actually articulated a consciousness of some prejudicial effect," but whether "an unacceptable risk is presented of impermissible factors coming into play." *Id*. at 570 (quoting *Estelle v. Williams*, 425 U.S. 501, 505 (1976)). If the arrangement is inherently prejudicial, Appellant argues it must be justified by an essential state policy or interest. *Carey v. Musladin*, 549 U.S. 70, 75 (2006) (citing *Williams*, 425 U.S. at 505).

Appellant argues his challenge presents an issue of first impression in Missouri and he has found no case addressing "whether an employee of the state sitting next to an adult witness while that witness testified violates the constitutional rights of a defendant." Therefore, Appellant relies on cases reviewing other courtroom practices. The State cannot compel an accused to stand trial before a jury while dressed in identifiable prison clothes. *Williams*, 425 U.S. at 512. If a trial court "without adequate justification, orders a defendant to wear shackles that will be *seen by the jury*,

5

the defendant need not demonstrate actual prejudice to make out a due process violation." *Deck v. Missouri*, 544 U.S. 622, 635 (2005) (emphasis added). Although "the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable," the "sight of a security force within the courtroom might under certain conditions 'create the impression in the minds of the jury that the defendant is dangerous or untrustworthy.'" *Holbrook*, 475 U.S. at 569 (quoting *Kennedy v. Cardwell*, 487 F.2d 101, 108 (6th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 (1974)).

In *Holbrook*, before allowing uniformed officers to sit in the first row of the gallery, Appellant argues the trial court held a hearing, elicited testimony, and polled the jury panel to find the presence of police officers "would not affect the defendant's ability to receive a new [sic] trial." Here, Appellant agues it is unclear from the record why the victim services advocate was present, and the trial court elicited no testimony as to why her presence was necessary. Appellant argues there is "nothing on the record to suggest that all of the jurors could not see the advocate, despite the screen, as the jurors were allowed to move within their allotted spaces in the gallery," and "it is unclear if the advocate ever made any sort of gesture of reassurance or encouragement" to Victim. Appellant argues it is unclear whether the screen prevented the defense from monitoring the victim services advocate's conduct in the jury box.

Appellant argues the jury was aware of the victim services advocate's presence because she accompanied Victim into the courtroom. Appellant contends the screen merely affected the jury's degree of awareness, not its absolute awareness. *Deck*, 544 U.S. at 634. Appellant argues "there is a reasonable doubt" this arrangement "created a question in the jurors' minds as to why a person was sitting behind the screen, or why the screen was even there," during Victim's testimony. Appellant argues the victim services advocate's presence "elicited sympathy for

6

[Victim] and suggested to the jury [Victim] had been so traumatized by [Appellant] that she was frail and required assistance on the witness stand by an employee of the prosecutor's office in order to testify." Appellant argues Victim, who was twenty-five when she testified, did not need protection or reassurance while testifying because she is a "grown, adult woman." If Victim requested the victim services advocate's assistance, Appellant argues there was a "simple solution": "the advocate could have stood or sat behind the jury in the gallery."

The State argues the victim services advocate's position in the jury box was not inherently prejudicial because it did not cause impermissible factors to erode the presumption of Appellant's innocence. The State argues the jury could not see the victim services advocate during Victim's testimony because the victim services advocate was seated behind the screen. The State cites *State v. Pollard*, in which this Court held a victim's mother seated "in a chair just inside the railing" was not "in-and-of-itself an undue influence" causing "prejudicial harm to the defendant." 719 S.W.2d 38, 42 (Mo. App. E.D. 1986). In *Pollard*, this Court noted courts should have "wide latitude" regarding child victims of sexual abuse and victim's mother was instructed not to communicate "through gesture or otherwise, and defendant does not indicate she did so." *Id.*

The State argues trial courts have "wide discretion in determining whether to take action to avoid an environment for trial in which there is not a 'sense or appearance of neutrality.'" *Johnson v. State*, 406 S.W.3d 892, 903 (Mo. banc 2013) (quoting *Baumruk*, 85 S.W.3d at 650). The State notes control of trial rests with the trial court. *State v. Hendrix*, 646 S.W.2d 830, 833 (Mo. App. W.D. 1982). In this case, the State argues the trial court did not abuse its discretion because the victim services advocate sat apart from Victim and there is no evidence in the record they communicated during Victim's testimony. "By having the support person sit behind a screen," the State argues the trial court "took even more measures than the *Pollard* court to ensure that the

7

support person would not behave improperly." The State argues the "fact that the court did not appear surprised by the support person's presence suggests that there was a pre-trial arrangement to have the support person sit in the jury box." The State argues this case is distinguishable from both *Williams* and *Holbrook* because the victim services advocate was not visible to the jury and an accommodation for a victim is unlike practices directly affecting the defendant's appearance.

The State cites cases from foreign jurisdictions holding similar arrangements are not inherently prejudicial. In *People v. Myles*, the Supreme Court of California affirmed a conviction where a support person accompanied a prosecution witness, finding the record did not disclose any indication the "support person improperly influenced the jury's assessment of [the] testimony." 274 P.3d 413, 438 (2012). There, the trial court informed the jury the witness "was entitled by law to be attended by a support person during her testimony, and admonished them that the support person was 'not the witness.'" *Id.* The court noted the record did not disclose whether the support person had physical contact with the witness and there was no "indication that the support person displayed emotion or gestures suggesting to the jury" she believed the witness's account. *Id.* In *State v. Harrison*, the Supreme Court of Utah held "allowing a victim's advocate to accompany and sit near a minor victim during trial testimony is not inherently prejudicial" where the defendant alleged "no inappropriate behavior by the victim's advocate" during the minor victim's testimony. 24 P.3d 936, 941 (2001).

*Analysis*

Because he claims a state-sponsored courtroom arrangement violated his "rights to a fair trial and due process," Appellant argues we "must determine whether [this] procedure or arrangement was 'so inherently prejudicial as to pose an unacceptable threat to [his] right to a fair trial.'" *Flynn*, 475 U.S. at 572. "It is elemental that due process includes the right to have a fair

8

trial before an impartial jury that has not been influenced by anything other than properly introduced evidence, the court's instructions, and the attorneys' arguments." *Peacock*, 725 S.W.2d at 90. The environment of a trial must give jurors, who may otherwise have been carefully selected, a sense or appearance of neutrality. *Baumruk*, 85 S.W.3d at 649. A trial court has wide discretion to determine whether to take action to ensure a neutral environment. *Johnson*, 406 S.W.3d at 903 (citing *Baumruk*, 85 S.W.3d at 650). A trial court sits as an intimate observer of events and is in the best position to judge whether certain conduct or messages risk depriving the accused of a fair trial. *Hartman*, 479 S.W.3d at 702 (citing *State v. Ward*, 242 S.W.3d 698, 704 (Mo. banc 2008)).

Whenever a courtroom arrangement is challenged as inherently prejudicial, the trial court must consider whether the practice presents an unacceptable risk impermissible factors will come into play which might erode the presumption of innocence. *Gollaher*, 905 S.W.2d at 547 (citing *Flynn*, 475 U.S. at 570). An inherently prejudicial practice is "one which may affect a juror's judgment and feelings about the defendant and/or constitute 'an affront to the very dignity and decorum of judicial proceedings.'" *Bello v. State*, 464 S.W.3d 284, 289–90 (Mo. App. W.D. 2015) (quoting *Flynn*, 475 U.S. at 568–69).

Appellant acknowledges no Missouri case law holds a support person's presence near a testifying witness is inherently prejudicial, and we are unpersuaded by Appellant's analogy to cases discussing arrangements affecting a defendant's appearance in court. Unlike in those cases, which describe a defendant in prison clothing or shackles or a conspicuous police presence surrounding him, the arrangement in this case did not present an "unacceptable risk" impermissible factors could come into play.

In arguing the screen between the victim services advocate and the jury did not "remove any prejudice," Appellant contends the State's argument "mirrors" the one it made in *Deck*. In that

case, the U.S. Supreme Court noted a finding there was "no record of the *extent* of the jury's awareness" of restraints placed on the defendant, which "apparently were not visible to the jury," did not "suggest that the jury was unaware of the restraints." 544 U.S. at 625, 635 (emphasis added). In *Deck*, defense counsel stated on the record his client was "shackled in front of the jury," suggesting the jury was aware of the shackles even if they could not see them during trial. *Id*. In this case, there is no question of the "extent" of the jury's awareness of the victim services advocate because there is no indication in the record the jury could see her at any time or knew who she was, who she worked for, or what her purpose was. Appellant cites his own allegation in his motion for new trial the jury observed the victim services advocate enter the courtroom with Victim and suggests the jury could have seen her as they moved around, but there is nothing in the record supporting these arguments.

The only indication the victim services advocate entered the courtroom with Victim is Appellant's allegation in his post-trial motion. Appellant argues for the first time in his Reply Brief his "motion for new trial is a part of the record," but cites no authority for this contention. Our own review suggests this is not the case. "A bare assertion by defense counsel does not prove itself and is not evidence of the facts presented." *State v. Smith*, 996 S.W.2d 518, 523 (Mo. App. W.D. 1999) (citing *State v. Shannon*, 892 S.W.2d 761, 765 (Mo. App. W.D. 1995)) (holding the record was "devoid" of proof jurors observed defendant in handcuffs because claim was supported only by defense counsel's assertion). We note *Deck* held the record made "clear that the jury was aware of the shackles" where, following defense counsel's objection to the defendant's shackling in front of the jury, the trial court acknowledged the basis of the allegation: "being shackled takes any fear out of their minds." 544 U.S. at 634.

Appellant cites *Hartman*, in which the Western District held a child witness testifying in a Bikers Against Child Abuse ("BACA") vest did not inherently prejudice the defendant. 479 S.W.3d at 706.[2] This case is instructive. Among other factors, the Court was persuaded by the lack of indication in the record BACA's meaning was explained to the jury. *Id*. The Court held there was "no evidence, beyond speculation, that any impermissible influence *reached or could have reached the jury*." *Id*. at 704 (emphasis added). Here, we cannot conclude Appellant was inherently prejudiced because there is no indication in the record the jury knew who the victim services advocate was, who she worked for, or why she was seated in the jury box. Appellant has therefore not demonstrated this courtroom arrangement was one that could "affect a juror's judgment and feelings about the defendant and/or constitute 'an affront to the very dignity and decorum of judicial proceedings.'" *Bello*, 464 S.W.3d 284 at 289–90 (quoting *Flynn*, 475 U.S. at 568–69).

We note Appellant's assertion in his motion for new trial that he asked the trial court to place the victim services advocate in the gallery behind the jury. Contrary to Appellant's argument the trial court did not make findings or see "the matter as one calling for discretion," the trial court's reliance on the screen and its declining to place the victim services advocate in the gallery were exercises of the trial court's discretion. As Appellant suggests, "it may be assumed that the suggestion was made by [Appellant] and was rejected by the trial court." We therefore cannot determine the trial court abused its broad discretion to determine whether to take action to ensure a neutral environment. *Johnson*, 406 S.W.3d at 903 (citing *Baumruk*, 85 S.W.3d at 650). As stated

---

[2] In his Reply Brief, Appellant argues for the first time *Hartman* is inapplicable because the Court reviewed conduct by private parties. Here, the parties do not dispute the victim services advocate is a state actor. But *Hartman* stated "[assuming] *arguendo* that Hartman could show that conduct by a private party could be inherently prejudicial to his right to a fair trial, Hartman has made no such showing here." Because *Hartman* applied the inherent prejudice standard, we follow its reasoning here.

by the trial court to the jury, the courtroom arrangements were unusual because of COVID-19 precautions.

Because the victim services advocate's presence in the jury box during Victim's testimony was not inherently prejudicial, the trial court did not abuse its discretion in allowing this arrangement. Because the arrangement was not inherently prejudicial, Appellant does not demonstrate he was deprived of a fair trial in violation of his constitutional rights. *Flynn*, 475 U.S. at 572.

Point I is denied.

*Point II: Actual Prejudice*

*Argument*

Alternatively, Appellant argues the trial court erred allowing the victim services advocate to sit in the jury box because he was actually prejudiced by this courtroom arrangement. Appellant argues he was actually prejudiced because the victim services advocate's presence suggested Victim was frail as a result of Appellant's actions and there is "a reasonable probability" it signaled to the jury a belief "the unorthodox arrangement was required because [Appellant] did *something* to [Victim], even if the jury did not otherwise find her credible." Emphasis original.

Appellant agrees a trial court "has considerable discretion in matters regarding the examination of witnesses" and the "exercise of that discretion should not be disturbed on appeal unless it has been abused or substantial harm has been improperly done to the complaining party." *Welch*, 600 S.W.3d at 815 (quoting *Dickson*, 337 S.W.3d at 743). Appellant argues a trial court's action should not be affirmed under an abuse of discretion review where the trial court made no findings supporting its decision. *Deck*, 544 U.S. at 634–35. Appellant argues the victim services advocate was permitted to sit closer to Victim than the victim's mother in *Pollard* and there was

12

no admonishment to prevent communication between Victim and the victim services advocate. Appellant also argues *Pollard* is inapplicable because that case concerned a child witness, not a twenty-five-year-old adult.

Appellant argues section 491.725 provides for support people to assist victim testimony in limited circumstances, but it applies only to children. Because section 491.725 requires a multi-step procedure which the State did not follow, Appellant argues the statute does not validate the arrangement at Appellant's trial even if it could apply to adults such as Victim. Appellant argues this section is "not applicable."

The State argues Appellant cannot prove he was actually prejudiced by the victim services advocate's position in the jury box because there is not a reasonable probability the jury would have acquitted him of stealing Victim's car. The State argues Appellant's acquittal on the kidnapping and armed criminal action charges suggests the victim service advocate's presence "did not influence the jury's verdict and was therefore not prejudicial." The State argues the trial court explained the victim services advocate was six feet from Victim and seated behind the screen, demonstrating it carefully considered Appellant's objection and did not deny it arbitrarily.

The State argues Appellant cannot meaningfully distinguish *Pollard* because the court "did not indicate how far away the victim sat from the support person."[3] The State cites *State v. Powell*, which held a trial court did not abuse its discretion in allowing minor children to testify with the assistance of stuffed animals. 318 S.W.3d 297, 304 (Mo. App. W.D. 2010). The *Powell* court noted "the trial court had the opportunity to observe the child witnesses and fully consider the usefulness

---

[3] The State addresses both of Appellant's points in a single argument section. This violates Rule 84.04(f), which requires the "argument portion of the respondent's brief shall contain headings identifying the points relied on contained in the appellant's brief to which each such argument responds." The State includes this argument in the portion of its brief concerning inherent prejudice, but Appellant does not mention *State v. Pollard* until Point II, where Appellant discusses actual prejudice. We therefore discuss the State's contention regarding *Pollard*'s applicability in Point II.

13

of the teddy bears against the possibility of any prejudice" and there was "nothing to suggest that the stuffed animals were merely an attempt to cater to the emotional sympathy of the jurors." *Id*. at 303. No reference was made "by any of the witnesses or counsel in the presence of the jury." *Id*. at 303–04. The State cites *Hartman*, which held the trial court did not abuse its discretion in overruling an objection to witnesses wearing vests displaying the acronym for BACA, where the trial court took "numerous precautions" to safeguard a neutral atmosphere. 479 S.W.3d at 704–06. There was no indication in the record the acronym was explained to the jury, "that any effort was made to focus attention on the vests," or "that the use of vests was calculated to elicit emotional sympathy from the jury." *Id.* Here, the State argues Appellant's side-bar objection is the only reference to the victim services advocate in the record and any prejudice was outweighed by its usefulness to Victim. The State argues the trial court went further than the precautions taken in *Powell* and *Hartman* by separating with a screen the victim services advocate from the jury's sight.

The State argues Appellant erroneously contends, for the first time on appeal, section 491.725 is inapplicable. The State argues section 491.725.2 permits a disinterested, court-designated support person "to be present in the courtroom, in view of the child witness." The State argues Victim is a covered "child" because the section applies not only to minors, but also to "the alleged victim or witness in any judicial proceeding under chapter 455, 565, 566, or 568." Section 491.725.2(1). Because Appellant was charged with first-degree kidnapping under a statute in chapter 565, the State argues the victim services advocate was permitted to sit near Victim during her testimony. Regarding Appellant's argument the trial court failed to make oral findings under the statute, the State argues this is an inadequate foundation argument that cannot be raised for the first time on appeal. *State v. Tisius*, 362 S.W.3d 398, 407 (Mo. banc 2012). The State argues any

14

constitutional challenge to the statute Appellant makes on appeal "is untimely and should not be considered."

*Analysis*

If a challenged practice is not inherently prejudicial, a defendant must show actual prejudice. *Holbrook*, 475 U.S. at 572. Appellant argues the victim services advocate's placement in the jury box was suggestive and there is a "reasonable probability" her presence suggested to the jury "the unorthodox arrangement was required because [Appellant] did *something* to [Victim], even if the jury did not otherwise find her credible." Emphasis original.

We disagree because there is no indication in the record the jury knew who the victim services advocate was, who she worked for, or why she was in the jury box. There is no indication the victim services advocate encouraged or coached Victim in any way during her testimony. The record demonstrates the victim services advocate was six feet away from Victim and she was not the only person in the jury box. The screen separated the victim services advocate from the jury, which was seated in the gallery. Appellant points out "trial courts must be cognizant of the possibility that comfort items or other accommodations for minors may unfairly engender sympathy for complaining witnesses." *Powell*, 318 S.W.3d at 304. But as in *Powell*, there is no indication in the record the victim services advocate's presence in the jury box was "merely an attempt to cater to the emotional sympathy of the jurors." *Id.* at 303.

Appellant notes *Powell* suggested courts "should require some explanation of the need for [comfort items]" upon objection. *Id.* As we noted in Point I, Appellant argues "it may be assumed" Appellant made his own suggestion to place the victim services advocate in the gallery behind the jury, which was rejected by the trial court. So, the record does not demonstrate any failure by the trial court to consider the appropriateness of the courtroom arrangement based on arguments from

15

the parties. We reject Appellant's argument the trial court failed to make even informal findings because the trial court, in overruling Appellant's objection at trial, stated on the record the victim services advocate was seated six feet from Victim and the screen separated the victim services advocate from the jury.

We decline to address Appellant's argument concerning section 491.725 because it is not preserved. To properly preserve an issue for appeal, a party's objection at trial must be specific and he must rely on the same grounds on appeal. *Tisius*, 362 S.W.3d at 405 (citing *State v. Rasheed*, 340 S.W.3d 280, 287 (Mo. App. E.D. 2011)). At trial, Appellant objected "under the 5th and 14th Amendment of the United States Constitution and Article 1, Section 10, 18(a) of the Missouri Constitution," but made no reference to section 491.725. Appellant also argues "there is nothing in the record suggesting that the trial court utilized the Child Witness Protection Act in permitting the victim advocate to sit next to the adult complaining witness as she testified." We agree. Section 491.725 is not an issue before us. We will not convict a trial court of error on an issue which was not put before it to decide. *Marck Indus., Inc. v. Lowe*, 587 S.W.3d 737, 745 (Mo. App. S.D. 2019) (citing *First Bank Ctr. v. Thompson*, 906 S.W.2d 849, 859 (Mo. App. S.D. 1995)).

Because Appellant does not demonstrate he was actually prejudiced by the victim services advocate's presence in the jury box during Victim's testimony, we cannot determine the trial court abused its discretion in allowing this courtroom arrangement. Because he does not establish inherent prejudice or actual prejudice, Appellant does not demonstrate he was deprived of a fair trial in violation of his constitutional rights. *Flynn*, 475 U.S. at 572.

Point II is denied.

## Conclusion

For the reasons stated above, we affirm.

_____
Philip M. Hess, Judge

Kelly C. Broniec, P.J. and
James M. Dowd, J. concur.